# McElroy, Deutsch, Mulvaney & Carpenter, LLP
### ATTORNEYS AT LAW

88 Pine Street
24th Floor
New York, New York 10005
(212) 483 9490
FACSIMILE (212) 483 9129

RICHARD S. MILLS
rmills@mdmc-law.com

November 1, 2006

**VIA REGULAR MAIL AND FACSIMILE 617.748.9096**

Hon. Mark L Wolf
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA 02210-3002

> Re: *United States v. Maggio, et al.,*
> Case No.: 04-cr-10231
> Sentencing Date: November 3, 2006
> Restitution Claim of National Union Fire Ins. Co. of Pgh., Pa.
> Our File No.: A0014-pm14201

Dear Judge Wolf:

I represent National Union Fire Insurance of Pittsburgh, Pa. ("National Union"), the fidelity insurer for CIT Group, Inc. ("CIT"), and its affiliated company, CIT Equipment Financing, Inc. (hereinafter collectively referred to as "CIT"). I respectfully request that Your Honor permit me to participate in the sentencing hearing as a victim's representative. To the extent necessary, local counsel has undertaken to file a motion for my admission *pro hac vice*.

National Union's insured, CIT, was a direct victim of the crimes alleged in the Superseding Indictment filed in the referenced matter. CIT's district sales manager, defendant Michael O'Neill, conspired with the other defendants to procure the fraudulent loans that are the subject of the indictment; in return Mr. O'Neill received kickbacks from the co-defendants and increased the loan amounts in order to receive a higher fee. The borrowers defaulted on the fraudulent loans, and CIT presented a claim for the resulting losses to National Union pursuant to a policy of employee fidelity insurance affording coverage for such a losses.

National Union paid $3,294,512.91 to indemnify CIT pursuant to the terms and conditions of the aforesaid insurance policy, which include, *inter alia*, a one million dollar deductible. In

## MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

Hon. Mark L Wolf
Page 2

consideration of the claim payment, and in keeping with the policy provisions governing the allocation of recoveries, CIT assigned all of its rights against the defendants herein to National Union, including CIT's right to restitution. A copy of CIT's Assignment to National Union accompanies this letter. Accordingly, National Union is entitled to an order of restitution in its favor – both in its own right as a subrogated insurer (18 U.S.C.A. § 3664 (j) (1)), and as the assignee of CIT – for the full amount of the loss sustained by CIT as a result of the defendants' conduct.

We understand that Mr. O'Neill and the Government have taken different positions concerning the amount of loss sustained by CIT. Mr. O'Neill contends that he should only be held responsible for losses sustained on or after August 27, 1999, the date he asserts that he joined the criminal conspiracy. The Government argues that Mr. O'Neill is responsible for all of the fraudulent loans procured from CIT by Mr. O'Neill and his co-conspirators. We agree with the Government, and note as a practical matter, that if Mr. O'Neill had chosen to disclose the conspiracy rather than join it, it is likely that CIT would not have sustained any loss. Accordingly, we respectfully request that the order of restitution encompass all of the fraudulent loans extended by CIT, whether procured before or after August 27, 1999.

To assist the Court in determining the amount of the loss actually sustained by CIT for purposes of sentencing and restitution we provide the enclosed Summary of Loans and Losses, and ask that the same be considered as a statement by the victim concerning the amount of losses subject to restitution. See 18 U.S.C. § 3664 (d)(2)(A)(vi). This schedule specifies the amount of each (fraudulent) loan paid by CIT [col. 4]; the amount repaid by the putative borrower [col. 5]; the amount recovered by CIT (e.g., via seizure of collateral) net of the cost of recoveries [col. 6]; and the amount of other post-loss recoveries deducted from CIT's insurance claim [col. 7]. In sum, National Union's forensic accountants determined that CIT's net direct loss was $4,165,372.86.

Thus, taking the one million dollar deductible into account, National Union was obligated under the insurance policy to pay $3,165,372.86 to indemnify CIT for its direct loss. In addition to paying the direct loss, National Union compensated CIT for certain consequential losses and expenses incurred in quantifying and presenting its claim ($126,433.26) – but these sums are not direct losses of the type contemplated by 18 USC § 3663A (b)(1)(B) for purposes of ordering restitution.

Accordingly, National Union seeks an order of the Court specifically directing each defendant, to pay restitution in the sum of $4,165,372.86 to National Union as the subrogee and assignee of CIT. It is respectfully requested that the Court enter a further order directing that the Clerk of this Court issue an abstract of judgment certifying that a judgment has been entered against each defendant in favor of National Union in the amount specified in the restitution order, as contemplated by 18 U.S.C. § 3664 (m)(1)(B). Finally, National Union respectfully requests that the Court subordinate the payment of any fine or monetary penalty entered against the

## McElroy, Deutsch, Mulvaney & Carpenter, LLP

Hon. Mark L Wolf
Page 3

defendants so that it will not impair the ability of the defendant to make restitution (per 18 U.S.C. § 3572(b)), and for such other and further relief as the Court deems just.

Respectfully submitted,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

Richard S. Mills

cc: USPO Sean Buckley
AUSA Victor Wild
All Counsel of Record

Enclosures: Assignment
Summary of Loans and Losses