1

1    UNITED STATES DISTRICT COURT

2    DISTRICT OF MASSACHUSETTS

3    No. 1:04-cr-10231-MLW-1

4

5
UNITED STATES OF AMERICA
6

7
vs.
8

9
PETER V. MAGGIO, III, et al
10

11

12    *********

13

14    For Hearing Before:
Chief Judge Mark L. Wolf
15

16    Sentencing Hearing, Day III

17
United States District Court
18    District of Massachusetts (Boston.)
One Courthouse Way
19    Boston, Massachusetts 02210
Monday, November 20, 2006
20

21    ********

22
REPORTER: RICHARD H. ROMANOW, RPR

23          Official Court Reporter
              United States District Court
24     One Courthouse Way, Room 5200, Boston, MA 02210
              (617) 737-0370
25

2

1        A P P E A R A N C E S

2

3   VICTOR A. WILD, ESQ.
     United States Attorney's Office
4    John Joseph Moakley Federal Courthouse
     1 Courthouse Way, Suite 9200
5    Boston, Massachusetts 02210
     (617) 748-3145
6    Email: Victor.wild@usdoj.gov
     For the United States of America
7

8   JAMES M. MERBERG, ESQ.
     Law Office of James M. Merberg
9    66 Long Wharf, Suite 4
     Boston, Massachusetts 02110
10   (617) 723-1990
     Email: Jbrb127@aol.com
11   For Peter V. Maggio, III

12

    ELLIOT M. WEINSTEIN, ESQ.
13   83 Atlantic Avenue
     Boston, Massachusetts 02110
14   (617) 367-9334
     Email: Elliot@eweinsteinlaw.com
15   For William A. Howe

16

    ROGER WITKIN, ESQ.
17   6 Beacon Street, Suite 1010
     Boston, Massachusetts 02108
18   (617) 523-0027
     Email: Roger@rogerwitkin.com
19   For Matt A. Havey

20
   SCOTT P. LOPEZ, ESQ.
21    24 School Street, 8th Floor
    Boston, Massachusetts 02108
22    (617) 742-5700
    Email: Lopez@lopezlaw.com
23    For Louis A. Paradiso

24

25   (Continued.)

3

1   (Continued.)

2

3   WILLIAM M. WHITE, JR., ESQ.
    Davis, Robinson & White, LLP
4    One Fanueil Hall Marketplace
    South Market Place
5    Boston, Massachusetts 02109-1649
    (617) 723-7339
6    Email: Wmwlaw1@aol.com
    For Sean Sacco

7

8   JOSEPH S. OTERI, ESQ.
    Oteri, Weinberg & Lawson
9    Statler Building
    20 Park Plaza, Suite 905
10    Boston, Massachusetts 02116
    (617) 227-3700
11    Email: Lroseowl@att.net
    For Michael R. O'Neill

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          P R O C E E D I N G S

2          (Begins, 3:00 p.m.)

3          THE CLERK:  Criminal 04-10231, the United

4    States versus Peter Maggio, et al.  The Court is in

5    session.  You may be seated.

6          THE COURT:  Good afternoon.  Would counsel

7    please identify themselves for the record.

8          MR. WILD:  Good afternoon, your Honor.  Victor

9    A. Wild for the Government.  And with leave from the

10   Court, may I continue to have Special Agent Scott

11   Robbins at counsel table?

12          THE COURT:  Yes.

13          MR. WILD:  Thank you.

14          MR. WHITE:  Good afternoon, your Honor.

15     William White on behalf of Mr. Sacco.

16          MR. MERBERG:  Good afternoon.  James Merberg

17     on behalf of Peter Maggio.

18          MR. LOPEZ:  Good afternoon, your Honor.  Scott

19     Lopez on behalf of Louis Paradiso.

20          MR. WEINSTEIN:  Good afternoon, your Honor.

21     Elliot Weinstein representing William Howe.

22          MR. OTERI:  Good afternoon, your Honor.

23     Joseph Oteri for Mr. O'Neill.

24          MR. WITKIN:  Good afternoon, your Honor.

25     Roger Witkin on behalf of Mr. Havey.

                          5

1          THE COURT:  Okay.  Each of the defendants is

2     present.

3          Since we suspended, 5:00 on Friday, I've given a

4     great deal of thought to the matters presented.  I'm

5     going to proceed as follows.  I'm going to announce the

6     sentence that I'm imposing on each defendant -- and I'll

7     go through all six of them before I explain my reasons

8     in order to alleviate any avoidable suspense, and then

9     I'll go back and explain individually the reasons for

10    each of the sentences.  I'll tell the six defendants now

11    that they each have a right to appeal my sentence within

12    10 days of entry of judgment.  If you would like to do

13    so but can't afford a lawyer, a lawyer will be appointed

14    to represent you at public expense.

15         In essence, I followed the process prescribed by

16    the First Circuit in Jimenez Beltray.  As you know, I've

17    spent good parts of three days calculating the guideline

18    ranges for each defendant and I've given the guidelines

19    appropriate weight.  I've then decided whether a

20    traditional departure is justified.  Finally, I've

21    considered the Section 3553(a) factors in the direction

22    that the sentence be sufficient but no more than

23    necessary to comply with the Section 3553(a) purposes of

24    sentencing.  Ultimately I'm imposing a sentence that I

25    find to be most reasonable.


                                6

1         Each of the defendants should stand.

2         Well, actually before we do that, with regard to

3    Mr. Maggio, I've decided that no departure or variance

4    under the Section 3553(a) factors is justified.  I fully

5    recognize that Mr. Maggio has energetically attempted to

6    cooperate with the government in several

7  investigations.  No 5(k) motion has been filed in part

8  because he committed other crimes while cooperating,

9  including, I believe, the crimes in this case while he

10  was cooperating in the Cerino case that was before me.

11  I also fully accept that Mr. Maggio is bipolar and that

12  that may have influenced in some way his conduct,

13  although I note that many people are bipolar and they

14  don't repetitively engage in massive frauds.  And I

15  appreciate and regret that there are poignant family

16  circumstances here, that Mrs. Maggio has cancer which

17  may prove to be fatal and that Mr. Maggio's daughters

18  are suffering severe emotional distress.  This

19  combination of factors in some cases would justify a

20  downward departure or variance.  However, under Section

21  5(k)2.0 of the guidelines, which quotes Section 3553(b)

22  of the statute, "A judge may depart only if

23  extraordinary circumstances should result in a sentence

24  different from that prescribed by the guidelines."  I

25  believe that, generally speaking, this same concept

7

1  applies to Booker variances.

2      In this case, Mr. Maggio was the mastermind and

3  the engine of a widespread scheme that defrauded various

4    institutions of more than 15 million dollars.  As part

5    of that, he drew in some naive, vulnerable co-defendants

6    who never would have committed a Federal crime, let

7    alone a massive fraud -- and I don't mean all of his

8    co-defendants, but particularly with regard to

9    Mr. Paradiso, Mr. Sacco and Mr. Havey, people who have

10   ended up in Federal court after about five or six years

11   of anxiety with their lives substantially injured, if

12   not ruined.  So in view of the seriousness of the

13   offense, the effect on others, and the need to serve the

14   purposes I'll describe when I get to the reasons for the

15   particular sentence, the motion for downward departure

16   is denied.

17          Mr. Maggio, please stand.

18             (Mr. Maggio stands.)

19             THE COURT:  For reasons that I will describe

20   after I've announced the sentence for your

21   co-defendants, I hereby sentence you to serve 98 months

22   in the custody of the Attorney General of the United

23   States, to be followed by 36 months of supervised

24   release.  I'm not imposing a fine because I find you

25   cannot pay a fine, even in installments.  In part,

8

1    because I'm ordering you to pay $15,731,860 as

2    restitution and there's an $1100 mandatory special

3    assessment.

4         The restitution shall be paid in the amounts of

5    $8,552,393 to New Holland Credit, $4,963,832 to CIT

6    Group, or National Union on its behalf, $901,129 to

7    General Electric Capital, $476,000 to Volvo Commercial,

8    $118,000 to Orix Credit Alliance, $72,479 to Greentree

9    Financial, $305,376 to O'Connor GMC, $266,307 to U.S.

10    Bank Corp., $6,081 to Eastern Bank Financial, and

11    $69,817 to Caterpillar Financial Services.

12         Your supervised release will be on the standard

13    conditions and on the additional conditions that you not

14    possess a firearm or other dangerous weapon.  That you

15    pay the restitution according to a repayment schedule

16    that I will order.  You may not incur any new charges or

17    open any additional lines of credit without the approval

18    of the Probation Officer.  You must provide the

19    Probation Officer access to any requested financial

20    information and that information may be shared with the

21    Financial Litigation Unit of the U.S. Attorney's

22    office.  In addition, you shall participate in a mental

23    health treatment program as directed by the Probation

24   Office and contribute to the costs of that treatment to

25   the extent you have ability to pay or insurance.

9

1       You may be seated for the moment.

2       MR. MAGGIO:  Thank you.

3       (Mr. Maggio is seated.)

4       THE COURT:  Mr. Howe, please stand.

5       (Mr. Howe stands.)

6       THE COURT:  For the reasons that I'll describe

7   after I impose sentence on your co-defendants, I hereby

8   sentence you to serve 21 months in the custody of the

9   Attorney General of the United States to be followed by

10   36 months supervised release.  I'm not imposing a fine

11   because I find you cannot pay a fine, even in

12   installments.

13       I am, however, ordering you to pay restitution in

14   the amount of $4,282,200, and, in addition, there's an

15   $800 special assessment.

16       With regard to your supervised release, it, too,

17   is on the standard conditions and on the additional

18   conditions that you not possess a firearm or any

19   dangerous weapon, that you pay the restitution to the

20   parties and on a schedule that I will order.  You, too,

21   may not incur any new credit charges or open any

22   additional lines of credit without the approval of the

23   Probation Officer.  You should provide the Probation

24   Officer access to any request of financial information,

25   and that information may be shared with the Financial

10

1   Litigation Unit of the U.S. Attorney's office.

2        And, in fact, those are conditions that are being

3   imposed on all six of the defendants today.  I won't

4   repeat them each time.  You may be seated.

5        (Mr. Howe is seated.)

6        THE COURT:  Mr. O'Neill, please stand.

7        (Mr. O'Neill stands.)

8        THE COURT:  For reasons that I will describe,

9   I hereby sentence you also to serve 21 months in the

10   custody of the Attorney General of the United States, to

11   be followed by 36 months of supervised release.

12        You shall pay restitution in the amount of

13   $1,813,820 to the National Union Fire Insurance Company

14   on behalf of CIT.  Your duty to pay restitution begins

15   immediately and will continue during your supervised

16   release.  You are also ordered to pay a fine of $7,500

17   after the restitution is paid.  In addition, there's a

18    $400 mandatory special assessment.

19        And as I said, the special conditions are as I

20    described them a moment ago for Mr. Howe.  And if I

21    haven't mentioned it, there's also a $400 special

22    assessment.

23        Mr. O'Neill, you may be seated for now.

24         (Mr. O'Neill is seated.)

25        THE COURT:  Mr. Paradiso, please stand.


11

1         (Mr. Paradiso stands.)

2         THE COURT:  Mr. Paradiso, I hereby sentence

3    you to serve 12 months and 1 day in the custody of the

4    Attorney General of the United States, to be followed by

5    36 months of supervised release on the conditions I

6    described earlier.  I'm not imposing a fine, because I

7    find you cannot pay a fine, even in installments.

8         I am, however, ordering you to pay restitution of

9    $1,792,849 and a $500 special assessment.

10        The conditions of your supervised release are as I

11    described earlier.

12        In addition, all of the defendants are being

13    ordered to give DNA samples.

14        You may be seated for now.

15          (Mr. Paradiso is seated.)

16          THE COURT:  Mr. Sacco, please stand.

17          (Mr. Sacco stands.)

18          THE COURT:  Mr. Sacco, I hereby sentence you

19   to serve 24 months probation.  I'm not imposing a fine

20   because I find you cannot pay a fine, even in

21   installments.

22          There is, however, $420,878 in restitution and a

23   $200 special assessment.

24          And your special conditions are as I described

25   earlier concerning Mr. Howe.

                              12

1          You may be seated for now.

2          (Mr. Sacco is seated.)

3          THE COURT:  Mr. Havey, please stand.

4          (Mr. Havey stands.)

5          THE COURT:  I've been advised by Probation

6    earlier today that if a 15 month sentence was imposed,

7    the Bureau of Prisons would order your release on

8    December 12, 2006.  So I hereby sentence you to serve 15

9    months or the equivalent of 15 months in the custody of

10   the Attorney General, but I'm ordering that you be

11   released -- well, perhaps I should put it this way.  I'm

12    ordering that you continue to be in the custody of the

13    Attorney General until December 12, 2006, at which time

14    you'll be released.  That's the equivalent of a 15 month

15    sentence.  I've been informed that the Bureau of Prisons

16    would not designate Mr. Havey and they would inform the

17    Marshal service to hold him until December 12, when he'd

18    be released from Plymouth.  So he got a 15 month

19    sentence, but this will eliminate the risks of confusion

20    and some additional work.

21        There's 36 months of supervised release on the

22    conditions that I've described for Mr. Howe and, in

23    addition, you shall participate in a program for

24    substance abuse counseling, as directed by the United

25    States Probation Office, which program may include

13

1    testing up to 104 times a year, to determine whether

2    you've used alcohol or drugs.  You shall pay for the

3    cost of those testing and treatment services to the

4    extent you have the ability to pay or insurance.

5        You may be seated.

6          (Mr. Havey is seated.)

7          MR. WILD:  Your Honor, the Court did not

8    announce either restitution or a special assessment.

9        THE COURT:  Thank you.  For Mr. Havey?

10        MR. WILD:  Yes, for Mr. Havey.

11        THE COURT:  I'm sorry.

12        (Mr. Havey stands, again.)

13        THE COURT:  With regard to restitution,

14   Mr. Havey shall pay $437,104 and a $300 special

15   assessment.  I'm not imposing a fine because I find he

16   cannot pay a fine, even in installments.

17        Mr. Maggio, please stand.  Mr. Havey, you may be

18   seated.

19        (Mr. Havey is seated.)

20        (Mr. Maggio stands.)

21        THE COURT:  I've imposed a 98 month sentence

22   on you.  That is within the guideline range.  It is,

23   however, longer than the low end sentence the government

24   recommended.  But the reason for that is that while

25   there are competing considerations in your case,

14

1   including the considerations that, as I've said, might,

2   in other circumstances, have justified a departure or a

3   variance, someone deserves more than the low end

4   sentence when there's a range that's found to be usually

5   reasonable, and even with the other things you have

6   going for you, you deserve more than a low end sentence.

7        You've committed a very serious offense.  Your

8   motive was greed.  You've committed this offense after

9   you've been caught committing other offenses, or you

10  continued to commit this offense after you've been

11  caught committing other offenses.  You may have been

12  bipolar, I accept that you were, but you weren't

13  incompetent.  And, in fact, you demonstrated a real

14  capacity to operate.  And as a result, there were real

15  victims.

16       There are institutions who aren't likely to get

17  their 15 million dollars back, certainly not from you,

18  and you've got co-defendants, like Mr. Sacco and

19  Mr. Paradiso and Mr. Havey, particularly, who you've

20  lured into this scheme.  You told them that, in a worst

21  case scenario, if your fraudulent business didn't work

22  out -- although you didn't explain to them it was

23  fraudulent at the outset, but if your fraudulent

24  business didn't work out, they'd just have to declare

25  bankruptcy.

15

1        They've had a miserable five or six years.  For

2   some reason it took the government until 2004 to indict

3    this case.  They've had this hanging over them.  It

4    severely injured if not ruined their lives.  And

5    frankly, I don't have confidence that you've got the

6    message.  This is, I think, the fourth time that you've

7    been sentenced by somebody.

8         I find that 98 months is the most appropriate

9    sentence in view of all of the Section 3553(a) factors.

10   I'm not going to recite all of them with regard to each

11   defendant, although I've spent hours since Friday

12   thinking about them and many hours before that thinking

13   about them.  However, with regard to Mr. Maggio, a

14   sentence of 98 months is necessary to reflect the

15   seriousness of the crime you've committed, the

16   devastation that you've inflicted.  It's necessary to

17   try again to send you a message.  When you get out, as

18   I've said, since you showed uncommon resistance to

19   getting the message earlier, committing crimes while you

20   were cooperating with the government, I think a serious

21   sentence is necessary to try again to deliver that

22   message to you.

23        It's also very important to serve the interest of

24   general deterrence, the importance of discouraging

25   others from engaging in similar conduct.  You know,

16

1    white collar crimes, which are clearly not victimless

2    crimes, are crimes of calculation, and I hope that

3    anybody who hears about this sentence will realize it's

4    a miscalculation, or that other potential masterminds

5    will resist the temptation to use their talents to

6    defraud people of money because they hear that you got

7    98 months.  And it's 98 months that's intended to run

8    after all your other sentences expire.  It's not my

9    intention that it be concurrent with any time you've

10    gotten in any other case.

11         I considered Mr. Deveau's cooperation in sentence,

12    he got a year and a day, and he was a very serious and

13    significant player in this scheme.  But you're the only

14    person in the scheme more culpable than Mr. Deveau.  So

15    the fact that he cooperated and got a lower sentence is

16    not something that I find should benefit you.

17         You may be seated.

18          (Mr. Maggio is seated.)

19         MR. MERBERG:  Your Honor, before we go to the

20    other matters -- and I don't know if you want me to do

21    this seriatim or not, but he's now serving time on --

22         THE COURT:  I don't want to do this now.  When

23  I finish, I'll see if there are other matters to be

24  addressed.

25      MR. MERBERG:  All right, your Honor.


                        17

1       THE COURT:  Mr. Howe, please stand.

2       (Mr. Howe stands.)

3       THE COURT:  I've imposed on you a 21 month

4   sentence.  The guideline range for your sentence was 33

5   to 41 months and the government recommended a 33 month

6   sentence, while you were seeking a sentence of home

7   confinement.  I've given you a 21 month sentence as a

8   departure based on your exceptional, and I would say,

9   extraordinary good works.  This is a departure pursuant

10  to Section 5(h)(1.11) of the guidelines.  It is not a

11  Section 3553(a) variance.  Although I would vary, to

12  this extent, if it were necessary to do that.  However,

13  despite those exceptional extraordinary good works, for

14  the reasons I'll explain, a substantial term of

15  imprisonment, rather than home confinement, is necessary

16  and appropriate in your case.

17      I recognize that good works is a discouraged

18  ground for a downward departure, but the First Circuit

19  recognized, most recently, perhaps in Thurston that a

20    departure for good works is permissible if they are

21    exceptional good works.  That's Thurston, 358 F. 3rd 51

22    at 79.  Moreover, even if a departure would not have

23    been justified before Booker for good works, good works

24    may justify a somewhat shorter sentence under the

25    reasonableness standard that now applies, as was

18

1    explained in the later Thurston decision, I believe, at

2    Pages 319 to 320.

3        The First Circuit characterized Mr. Thurston as a

4    prominent, successful businessman who gave money.  When

5    I got that case on remand, that's not the way I saw

6    Mr. Thurston, but that's a distinction that the First

7    Circuit made, the distinction between giving money, if

8    you have a lot of money, and devoting your time and

9    talents, if you don't.  Mr. Howe was not a financially

10    successful businessman who gave money as many prominent

11    businessmen do, Mr. Howe repeatedly devoted his time to

12    people in need and did so to a truly exceptional

13    degree.

14        The Sixth Circuit in that Tocco case, T-O-C-C-O,

15    200 F. 3rd 401 at 434, you know, recognized the

16    distinction that I've often made myself and that I think

17   the First Circuit was implicitly making in Thurston.

18   They recognized that devoting time and talent may

19   justify a downward departure, where merely giving money

20   would not.

21       I don't think that I've ever encountered anybody

22   who's devoted so much of his time and talent to helping

23   others both on an organized, planned and spontaneous

24   basis.  This is something that I realize you've done,

25   Mr. Howe, over 40 years.  Those activities are

19

1   summarized in Mr. Howe's sentencing memorandum, which is

2   Docket Number 149, and in the many letters on his

3   behalf, both of which I hereby adopt.

4       But to just touch on it, I mean, Mr. Howe has, as

5   part of the fabric of his life, you know, been helping

6   really needy people.  He takes a blind lady shopping.

7   He has, on several occasions, served as a big brother.

8   He volunteers regularly at Children's Hospital and gives

9   an extraordinary amount of blood platelets, which are

10   vitally needed, and I fully accept, save lives.  And

11   he's also been a good Samaritan.  There were repeated

12   instances of his seeing women with automobiles broken

13   down on the highway, stopping to help them and, indeed,

14    turning around on the highway and finding them to help

15    them, and things that just reflect a generous

16    character.

17         I note that as soon as he was confronted by the

18    FBI in this case, Mr. Howe cooperated, he didn't go get

19    a lawyer, he didn't calculate how he should do it.  It

20    turned out to be too late for him to get a motion based

21    on substantial assistance because Mr. Deveau had already

22    been well advised, after he knew he was caught by CIT,

23    to come in and cooperate.  But the cooperation that you

24    gave at the outset of your interaction with the FBI is

25    part of your history and I've taken it into account.


                                  20

1         These exceptional works justify a reasonable

2    downward departure, but nevertheless a significant term

3    of prison is still necessary.  You have a prior

4    conviction for fraud.  If I read the presentence report

5    right, you served a 6 month sentence.  But that sentence

6    or that conviction, at least, was not adequate to deter

7    you from participating in this fraudulent scheme and

8    doing it repeatedly.  You repeatedly prepared false

9    financial statements and tax returns that were essential

10    to the fraud.  You couldn't have succeeded unless you

11    did that.  So you made an indispensable contribution,

12    you played a serious role in the commission of a serious

13    crime.

14         A prison sentence is necessary to deter you and

15    others with similar accounting skills.  I'm frankly

16    concerned that you haven't gotten the message even yet.

17    I recall your reluctance to plead guilty.  I continued

18    the matter, scheduled your trial, and you were reluctant

19    to plead guilty -- and you had a right to a trial if you

20    wanted one, but the evidence was particularly powerful

21    concerning you.  You don't -- you know, do you really

22    have trouble understanding --

23         MR. HOWE:  No, I don't.  I understand, your

24    Honor.  In fact, you're absolutely right.

25         THE COURT:  All right.  And you know it's a

21

1    crime to do what you did.

2         And, you know, a prison term is necessary to send

3    a message to you and to send a message so others and

4    it's also necessary to recognize the seriousness of the

5    offense.  I mean, you, too, contributed.  I don't think

6    I'd have Mr. Sacco and Mr. Paradiso or Mr. Havey here

7    unless somebody was willing to generate up these phony

8  documents and that was you.

9      I'm perplexed.  And I recognize that you only got

10  $13,000 from this scheme.

11      MR. HOWE:  I did one a month, your Honor, did

12  one set of statements a month, your Honor.

13      THE COURT:  Well, I understand that.  This is

14  what I've -- look, I've wrestled with it and this is

15  where it comes out.  You know, you got $13,000 -- I've

16  considered all of this.  You cooperated immediately when

17  you were confronted, you've done all these exceptional

18  good works, and, on the other hand, you know, this is

19  not the first time you've been in Federal court, being

20  sentenced by a Federal judge, and there are people out

21  millions and millions of dollars that they'll probably

22  never recover.

23      So it's just something -- well, you bring into

24  very sharp focus, you know, something I've seen over and

25  over, but rarely, if ever, as starkly as in you, that

                                22

1  somehow the very same people, you know, who love their

2  families, do wonderful things, also commit really

3  serious crimes.  And I know that I've considered all

4  these things and imposed what I regard as the most

5    reasonable sentence in the circumstances. I recognize

6    and regret that you're not going to be able to give

7    platelets for several years and that may cost innocent

8    people their lives. Sentences often impose high costs

9    on innocent people, usually family members, and this is

10   another case where it has evidently occurred.

11        You may be seated.

12        (Mr. Howe is seated.)

13        THE COURT: Mr. O'Neill, please, stand.

14        (Mr. O'Neill stands.)

15        THE COURT: Your sentence represents a

16   variance under Section 3553. The government recommended

17   a sentence of 37 months, the low end of the guidelines.

18   Like Mr. Howe, you played an essential role in the

19   scheme, you were the gatekeeper to CIT, but there are

20   some extraordinary circumstances that make a lower

21   sentence reasonable and most appropriate in your

22   particular case.

23        One of the things the law requires me to consider

24   is the nature and circumstances of the offense. You did

25   not know of Deveau's fraudulent scheme with Mr. Maggio

23

1    at the inception of the fraudulent loan applications to

2   CIT.  At that time you were already taking kickbacks on

3   legitimate loans, that is, kickbacks from Mr. Deveau,

4   and the way that was structured, evidently there was no

5   loss to CIT because you jacked up the loan rate to the

6   borrowers.  When you realized that Mr. Deveau and

7   Mr. Maggio were committing a fraud, though, you

8   acquiesced in it, you joined the agreement.  And I am

9   persuaded that your motive in doing that was to keep the

10  kickback scheme from being exposed.  As I understand it,

11  you made $61,000 from the kickback scheme -- well, maybe

12  $60,000 from the kickback scheme, but nothing from the

13  fraud charged in this case, except perhaps the $1,000

14  Mr. Maggio gave you when you came to Boston.

15       I've taken into account your history and

16  characteristics.  I understand that you grew up in a

17  very poor family.  That at a young age you started

18  taking financial responsibility for your parents and

19  your siblings by working hard.  I've taken into account

20  that you've been exceptionally supportive of your

21  brother-in-law and sister-in-law when they've had

22  extraordinary problems and I recognize you're active in

23  the community, but these things alone would not be

24  enough, in my view.  If we were sitting here several

25  years ago before courts were given more flexibility by

24

1  this Booker decision, it would not be, alone, enough to

2  justify a downward departure for good works.  They do,

3  however, definitely confer my sense that you don't need

4  to be deterred or rehabilitated.  I'm satisfied that

5  you're generally and deeply ashamed and contrite and

6  that you're not going to commit any crimes like this

7  again.

8       You, also, I recognize, tried to cooperate.  It

9  was too late.  You and Mr. Deveau should have realized

10  it at about the same time, to be colloquial, that "The

11  jig was up," but he got into the government first.  It's

12  somewhat unfair that Mr. Deveau gets a lesser sentence

13  than you, but not enough to cause me to reduce your

14  sentence further because of the sentence imposed on

15  him.  That has not influenced my decision with regard to

16  you.

17       I'm giving you 21 months in prison.  I think it's

18  a significant term in prison.  It's necessary to

19  recognize the seriousness of the offense when somebody

20  in a position of responsibility in a financial

21  organization violates that responsibility, it's serious

22   and people need to be discouraged.

23        I'll tell you one thing that has influenced me and

24   that is that I've ordered you to pay restitution of

25   $1,813,200.  You only earned $61,000 or maybe -- no more

25

1   than $61,000 from this scheme, but somehow, evidently

2   legitimately, you've earned enough money, you've saved

3   enough money to pay this restitution or a substantial

4   part of it, I expect.  You're going to suffer a very

5   major financial penalty.  As I've said -- and that's

6   part of the penalty here.  It's real and it's part of

7   the penalty imposed to recognize the seriousness of the

8   offense.  I expect that as people learn about this, it's

9   going to discourage them, it's going to deter them.

10   They're going to think, "Even if I make $60,000, I may

11   end of owing or having to pay, really pay, almost $2

12   million."

13        So I find that the degree of the departure, or

14   variance in this case, to be precise, is reasonable.

15   After Mr. Maggio and Mr. Deveau, you and Mr. Howe were

16   the most culpable, you played comparable roles, and I

17   have imposed the sentence that I think is most

18   reasonable in view of all the complex and competing

19    circumstances.

20        You may be seated.

21        (Mr. O'Neill is seated.)

22        THE COURT:  Mr. Paradiso, your sentence --

23    please stand.

24        (Mr. Paradiso stands.)

25        THE COURT:  Your sentence of a year and a day

26

1    is a downward departure, although, if necessary, I would

2    have exercised my discretion under Booker to impose the

3    same sentence.  The guidelines for you are 24 to 30

4    months.  The guideline range was driven by the amount of

5    the loss involved, almost $2 million has been attributed

6    to you.  However, as the First Circuit described in

7    Shattuck, 961 F. 2nd 1012 at 1016 to 1017, and Gregorio,

8    956 F. 2nd 341 at 346, Section 2(f)(1.1)(b)(1) of the

9    guidelines presumes that the defendant alone is

10    responsible for the entire amount of the loss.  The

11    Application 8 note of the November 19th, 1998 guidelines

12    that apply in this case states that:  "In some cases the

13    amount of the loss may significantly overstate the

14    seriousness of the defendant's conduct.  Where this

15    occurs, a downward departure may be warranted."

16    Shattuck and Gregorio referred to this note.

17         This is an encouraged departure, in the

18    appropriate case, and I find that this is such a case.

19    I find that Mr. Paradiso is a person of limited

20    education and intelligence, he comes from a religious

21    family, he has no criminal history.  Mr. Maggio

22    approached him when he was out of work and injured.

23    Mr. Maggio proposed borrowing Mr. Paradiso's credit in

24    return for payment to Mr. Paradiso of $100 per truck

25    purchased and ultimately part of what was supposed to be

27

1    a successful business.  There's no way that Mr. Paradiso

2    would have committed a crime at all and certainly no way

3    he would have been able to defraud anyone of large

4    amounts of money if he hadn't been influenced by

5    Mr. Maggio, and this alone justifies a reasonable

6    downward departure.

7         If a variance is necessary, I would say that

8    Mr. Deveau's sentence would further justify a reduction

9    for Mr. Paradiso and Mr. Sacco.  It would also justify a

10    variance for Mr. Havey, if that were feasible, which

11    it's not, for reasons I'll describe.

12         I fully recognize that the aim of the guidelines

13   is to diminish unwarranted national disparity.  However,

14   in Thurston, 456 F. 3rd 211 at 219, 220, earlier this

15   year the First Circuit recognized that a wide divergence

16   between the sentence imposed on co-defendants could

17   injure the public's respect for the law and therefore

18   justify a reasonable variance from a guideline

19   sentence.  Um, respect for the law is one of the Section

20   3553(a) factors.

21       In this case, Mr. Deveau was, with Maggio, one of

22   the masterminds of the scheme.  His company got $11

23   million worth of business and Mr. Deveau undoubtedly

24   richly profited from that.  He cooperated only after he

25   knew that his scheme was discovered by CIT.  The

28

1   government agreed that he could be removed from this

2   case, pursuant to Rule 20, and have his case transferred

3   to New York.

4       He was immunized.  The government made a motion

5   based on his substantial assistance.  The government did

6   not advocate, as aggressively as it advocated for most

7   of the defendants in this case, that the scheme Deveau

8   was in involved sophisticated means, so he started with

9   guidelines that were improperly calculated too low in my

10   view and he got a year and a day, which is actually less

11   time served than a year, because if he behaved, he would

12   get 15 percent off for good time.  So he would serve

13   about 10-plus months.

14        I find it would be utterly unjust for a virtual

15   dupe like Mr. Paradiso, who, without a lawyer,

16   cooperated immediately, but he could not get a

17   substantial assistance motion because he couldn't

18   assist, he didn't know anything of value to the

19   government, to get twice as long a sentence, twice as

20   much time as Mr. Deveau got.

21        I note that Mr. Paradiso profited from this scheme

22   somewhat.  He got paid something and his credit cards

23   were paid off.  So he got about $37,000 worth of benefit

24   from this scheme.  I don't find that it's been proven

25   that he did a lot of legitimate work for Mr. Maggio and

29

1   he did recruit others, although I found he wasn't a

2   supervisor or organizer, and he signed more than the

3   routine documents.  So some time in prison is necessary

4   to recognize the seriousness of the offense and to deter

5   other people.  And I find that, in your case, one year

6   and one day is the most appropriate sentence.

7        You may be seated.

8          (Mr. Paradiso is seated.)

9          THE COURT:  Mr. Sacco, please stand.

10         (Mr. Sacco stands.)

11          THE COURT:  Mr. Sacco has been sentenced only

12   to probation.  I've departed, with regard to Mr. Sacco,

13   primarily because the amount of the loss significantly

14   overstates the seriousness of his conduct, something

15   that's an encouraged departure in proper cases.  I would

16   also vary, if necessary, with regard to Mr. Sacco.  The

17   contrast between Mr. Sacco and Mr. Deveau is even more

18   stark than the contrast between Mr. Paradiso and

19   Mr. Deveau.

20       The record indicates that at the time Mr. Paradiso

21   recruited him, Mr. Sacco was -- his mother, with whom he

22   was very close, was in a coma.  Mr. Maggio told him that

23   -- if Mr. Sacco, in effect, lent him Mr. Sacco's credit,

24   Mr. Sacco would get a percentage of a legitimate

25   business.  Mr. Sacco saw that business was being done.

30

1   So working for Mr. Maggio provided flexible hours and

2   permitted Mr. Sacco to be more attentive to his mother

3   and Mr. Sacco really did work full time in Mr. Maggio's

4    businesses.  He was recruited at a time when he was very

5    vulnerable.  I find there's no way Mr. Sacco would have

6    committed a crime, let alone defrauded anyone of

7    hundreds of thousands of dollars, without Mr. Maggio.

8        I've had occasion to watch Mr. Sacco over -- now

9    of four days.  I find that he's genuinely and

10   extraordinarily contrite.  He seems to have been moving

11   between crying and praying through most of these

12   proceedings.  He could barely speak when it came time to

13   -- when it came his time to speak on Friday.  Mr. Sacco,

14   when confronted, cooperated immediately without a

15   lawyer.  He wasn't advised to do so like Mr. Deveau.  It

16   wasn't a calculated decision to try to influence his

17   sentence.  It would greatly injure the respect to the

18   administration of justice, I find, if he served longer

19   than Mr. Deveau and I find that no time is necessary to

20   deter him or to rehabilitate him.

21       This case has been hanging over Mr. Sacco and his

22   co-defendants for five or six years.  Mr. Sacco, I view,

23   is almost an unwitting participant in this offense.  I'm

24   not suggesting there wasn't a proper basis for his

25   guilty plea, but I do have the sense that if this case

31

1   went to trial, he would have had a real shot of being

2   acquitted.  I, as I've said to the others, do find white

3   collar crime generally, and this crime particularly, to

4   be a very serious offense and usually that influences me

5   to go to the jail end, if there's a reasonable range for

6   sentences, but those interests of the seriousness of the

7   offense and in deterring others do not outweigh the

8   factors in favor of a probationary sentence for

9   Mr. Sacco.

10          And I then I considered, "Well, maybe I ought to

11   make part of that probationary period home confinement,

12   maybe it would look better to somebody," but it's just

13   not necessary or appropriate with regard to Mr. Sacco.

14   So he's going to have to pay the restitution, or try to,

15   and he's going to have this hanging over him.  So those

16   are the reasons for the sentence with regard to

17   Mr. Sacco.

18          You may be seated.

19          (Mr. Sacco is seated.)

20          THE COURT:  Mr. Havey.

21          (Mr. Havey stands.)

22          THE COURT:  The factors that influenced me to

23   reduce Mr. Paradiso's sentence and Mr. Sacco's sentence,

24   to some extent, also exist in your case.  That you were

25   dragged into something that -- from a Jiffy Lube, that

                                    32

1    was way over your head and something that you never

2    could have got involved in on your own.  And I would

3    have imposed a shorter sentence, if it's feasible, but

4    you now have already served virtually a 15 month

5    sentence, and you did that because you weren't able to

6    obey the conditions of your pretrial release because

7    you've got a drug addiction.

8         And part of the reason I'm not just giving you a

9    sentence of time served, but making you serve another

10   couple weeks is to give the Probation Department a

11   chance to arrange a program for you, when you get out,

12   because I don't want to see you again.  There should be

13   consideration given to whether Mr. Havey is a candidate

14   for our drug court.  Maybe it's not necessary, but maybe

15   it is.  But, you know, whether it was a drug problem

16   that caused you to be greedy or whether you were just

17   dumb like some of your co-defendants, this may turn out

18   to have actually been a good opportunity for you.  I

19   know those drug habits are very hard for anybody to beat

20   on his own.

21     And you're going to get out in a couple of weeks

22   and you're going to be at a cross-roads.  You talked to

23   me, I think, very sincerely on Friday about how much

24   you, you know, miss your children.  You really have

25   something to go back to, but if you don't beat this drug

33

1   problem, you're not going to just lose your liberty,

2   you're going to lose your family.

3     When you get out, you won't be on your own.  The

4   Probation Department will be there to provide a partner

5   for you.  You're a good partner.  If you really work at

6   it, it's going to give you your best chance not to be

7   back in front of me, which is someplace you don't want

8   to be again.  All right.

9     Now -- you may be seated.

10     (Mr. Havey is seated.)

11     THE COURT:  Mr. Howe, Mr. O'Neill,

12   Mr. Paradiso are going to be incarcerated.  Mr. Maggio

13   already is.  Unless the government has a compelling

14   objection, if I'm requested, I'll give them until

15   January 8th at 12:00 noon to self report.

16     MR. WILD:  No objection.

17     MR. WEINSTEIN:  I have such a request for

18    Mr. Howe.

19          THE COURT:  It's granted.  Mr. Oteri, do you

20    make the same request?

21          MR. OTERI:  I do, your Honor.

22          THE COURT:  Mr. Lopez?

23          MR. LOPEZ:  Yes, your Honor.

24          THE COURT:  January 8th at 12:00 noon.  The

25    defendants who are released will have their release

                                   34

1    continue on the same conditions.  More specifically,

2    that's Mr. Paradiso, Mr. Howe and Mr. O'Neill.

3          Now, is there anything else in this matter for

4    today?

5          MR. OTERI:  Your Honor -- oh, I'm sorry.

6          MR. MERBERG:  If I may, your Honor, there are

7    three matters for Mr. Maggio.  The first is, he did

8    finish his sentence imposed by Judge Zobel in early

9    October.  I'm assuming that his sentence is not going to

10    be nunc pro tunc, it would be at least from the day he

11    would have been released from his last sentence.

12          THE COURT:  That's my understanding.  I think

13    the Bureau of Prisons in the first instance has to make

14    that calculation.  But if they don't give Mr. Maggio

15   credit for the time he's been serving since the

16   expiration of Judge Zobel's sentence, you could come

17   back to me.

18          MR. MERBERG:  And just for the record, he

19   lost, of course, his opportunity to have some -- either

20   home confinement or some other component at the end of

21   his last sentence, because of this case.  I understand

22   that doesn't necessarily make any difference today.

23          The second thing is I'd ask the Court to

24   recommend, as Judge Zobel did, that he participate in

25   the 500 hour drug program.  It was recommended by Judge

35

1   Zobel.  He was taken to the Buttner Medical Facility

2   because he was having seizures and he was never able to

3   take that program.  And, in essence, now it has

4   expired.

5          And lastly, and as part of the same request, I

6   would ask the Court to recommend that he be returned to

7   the medical facility at Buttner, because he was being

8   treated there for being bipolar and he was being treated

9   there for his seizures.

10          THE COURT:  Um, let's see.  Judge Zobel

11   recommended the 500 hour drug treatment?

12          MR. MERBERG:  She did, your Honor.

13          PROBATION OFFICER:  Yes, your Honor.

14          THE COURT:  All right.  Well, I will join in

15    that or reiterate the 500 hour drug treatment and

16    treatment for the bipolar disorder.  Whether that

17    requires Buttner or it could be properly addressed

18    someplace else, I've leave to the Bureau of Prisons.

19          MR. MERBERG:  I would ask the Court just to

20    note as a recommendation that the Court would be willing

21    that he be returned to Buttner.  He was in a treatment

22    program there.

23          THE COURT:  He was brought here from a

24    treatment program at Buttner?

25          MR. MERBERG:  That's correct.


                              36

1          THE COURT:  All right.  I'll recommend his

2    return to Buttner.  I will also say that you ought to

3    talk to the Bureau of Prisons yourself, because my

4    colleagues and I have noted that the Bureau of Prisons

5    has been increasingly unresponsive to our

6    recommendations.  It's something we intend to address on

7    an institutional basis.  But I don't think you can rely

8    on our recommendations being followed.

9          MR. MERBERG:  And the last matter is the one

10    that your Honor had mentioned at the beginning of the

11    sentencing hearing as it related to a detainer that was

12    pending in the first case that --

13          THE COURT:  Yeah, I'm going to ask -- I don't

14    even know what that detainer is.  I've got 8 feet worth

15    of papers.  The Probation Department should either move

16    by December 1st for me to act on that violation of

17    supervised release or, in consultation with the

18    government, ask me to withdraw it.  Because frankly --

19    and now it's 6, 7 years later, I think.  I've sentenced

20    the defendant.  I doubt I would give him any additional

21    time.

22          MR. WILD:  May I have a moment with Probation,

23    your Honor?

24          THE COURT:  Sure.

25          (Pause.)


                                    37

1          MR. WILD:  Thank you, your Honor.

2          THE COURT:  Okay.  If that's a loose end, that

3    will get resolved in the next couple of weeks.

4          MR. WILD:  Your Honor, for the benefit of all,

5    the government's position on that would be, as the Court

6    would expect, I think, that if Probation is willing to

7    withdraw that petition, the government has no objection.

8         THE COURT:  Thank you.

9         MR. MERBERG:  Can that be done today on the

10   record unless Probation has an objection?

11        THE COURT:  No, because I think it was

12   Mr. Buckley's colleague who was encouraging me to act on

13   it, so I think he should go back and have an opportunity

14   to consult everybody in his office who ought to be

15   consulted, so they can develop and consider an

16   institutional response.

17        MR. MERBERG:  Thank you, your Honor.

18        MR. WEINSTEIN:  With respect to Mr. Howe, your

19   Honor, I would ask that you receive from us, not later

20   than December 1st, a request for a judicial

21   recommendation for designation to the Bureau of

22   Prisons.  It's something that's difficult to explore in

23   the degree of precision that I would otherwise have

24   preferred, and so the final judgment is not entered

25   until then.  I know that it is an increasing challenge

38

1    for judges in this District, and perhaps elsewhere, to

2    have their recommendations followed, but we would just

3    like to have them -- and I'll make that in a writing not

4    later than a week from Friday.

5         THE COURT:  Okay.  As I think you've heard me

6    say before, in contrast to some of my colleagues, it's

7    my general policy not to make a recommendation because

8    it's my understanding that the Bureau of Prisons' own

9    policies provide that defendants will be incarcerated at

10   the facility with the proper security designation,

11   security level that's nearest to their home.  But I will

12   give you until December 1 to make that filing.  A copy

13   should be filed with the government and Probation, if

14   you make a request.

15        MR. OTERI:  Your Honor, the same request on

16   behalf of my client, Mr. O'Neill.  If you would think of

17   either Fairington, New Jersey or Skyco, Pennsylvania,

18   both are within driving distance of his home.

19        THE COURT:  Well, as I say, it's -- why don't

20   you put something in writing and I'll consider it.

21        MR. LOPEZ:  Your Honor, may I have the same

22   amount of time?

23        THE COURT:  Yes.

24        MR. LOPEZ:  Thank you.

25        MR. WILD:  I'll advise the Court that the

39

1  Government will have no objection to the designation by

2  the defendants.  That's frankly not a concern of the

3  government.

4          THE COURT:  Okay.  All right.

5          MR. WEINSTEIN:  I'm assuming, Judge, that that

6  will be an electronic filing with a specific copy to

7  Probation?

8          THE COURT:  Yes.  All right.

9      Is there anything further in this matter for

10  today?

11          MR. WILD:  No, your Honor.

12          THE COURT:  All right.  This is -- I'm sorry.

13  This has taken a long time because it's been important

14  to everybody involved, it's been challenging, the

15  adversary system has worked very effectively here from

16  my perspective.  The counselors should be commended for

17  that.

18      The Court is in recess.

19      (Ends, 4:10 p.m.)

20

21

22

23

24

25

40

1     C E R T I F I C A T E

2

3

4

5         I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

6     do hereby certify that the foregoing record is a true

7     and accurate transcription of my stenographic notes,

8     before Chief Judge Mark L. Wolf, on Monday, November 20,

9     2006, to the best of my skill and ability.

10

11

12

13

14

15
      _____
16     RICHARD H. ROMANOW

17

18

19

20

21

22

23

24

25